UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

----------------------------------------------------------------- x
:
:
EVELIN JIMINEZ, :
: **ORDER**
Plaintiff, : **DISMISSING/DENYING**
: **PETITION FOR WRIT**
-against- : **OF HABEAS CORPUS**
: **AND EMERGENCY**
: **MOTION FOR**
WARDEN, *et al.*, : **SENTENCE**
: **MODIFICATION**
Defendant. :
: 3:24-cv-01682 (VDO)
----------------------------------------------------------------- x

**VERNON D. OLIVER**, United States District Judge:

Petitioner Evelin Jiminez, a federal prisoner incarcerated at the Federal Correctional Institution in Danbury, Connecticut ("FCI Danbury"), has filed a *pro se* petition for writ of habeas corpus under 28 U.S.C. § 2241 and an "Emergency Motion for Modification of Sentence, Pursuant to the Second Chance Act of 2007 as Amended by the First Step Act of 2018 to Update Time Credits Based on her Extreme Hardships, Extraordinary and Compelling Reasons." Upon reviewing the Petitioner's pleadings and Respondent's response, the Court **DISMISSES** in part and **DENIES** in part the Petition and the Emergency Motion for the reasons that follow.

I. **BACKGROUND**

Petitioner was sentenced to a 52-month term of imprisonment to be followed by a three-year term of supervised release.[1] (Emergency Mot., ECF No. 3 at 1.[2]) Petitioner's federal sentence began on January 16, 2024,[3] and the BOP website shows that her anticipated release date is March 28, 2027.[4]

On October 21, 2024, Petitioner filed her §2241 Petition and Emergency Motion requesting that her earned time credits under the (FSA) be applied "up front" to her sentence calculation on the ground that such calculation and credit is consistent with BOP policy and she "has demonstrated extraordinary and compelling reasons." (ECF No. 3 at 3.) Petitioner also explains that she is the caregiver for her infant son and ailing mother, and they urgently need her as their caretaker. (*Id*. at 2.) She also seeks "to substitute her [i]ncarceration and[/]or apply the credits under the [BOP] policy . . . so that she may go to (RCC), or to (Home confinement or supervised release)." (*Id*. at 3.)

After reviewing the Petition and Emergency Motion, the Court ordered Respondent to respond to the Petition to show why the relief prayed for in the § 2241 Petition and Emergency

---

[1] After the first citation to a pleading or exhibit, the Court will omit the title of the pleading or exhibit in subsequent citations, and instead, solely reference the ECF numbers. The Court will also include certain citations in footnotes for purposes of brevity and coherence.

[2] *See also* Judgment, *USA v. Jiminez, et al.*, 18-Cr-00879-04 (SHS) (S.D.N.Y.), Ex. 2, ECF No. 12-2.

[3] *See* Breece Decl. Ex. 3, ECF No. 12-3 at ¶ 6.

[4] *See* BOP Inmate Locator, https://www.bop.gov/inmateloc/ (last visited April 15, 2025). The Court may take judicial notice of the BOP's inmate locator website. *United States v. Rivera*, 466 F. Supp. 3d 310, 313 (D. Conn. 2020) (taking judicial notice of information available through the BOP inmate locator tool).

Motion to modify sentence should not be granted and to address whether Petitioner has exhausted her institutional remedies.[5] (ECF No. 8.) Respondent filed a response asserting that the Petition and Emergency Motion should be denied in part and dismissed in part because: (1) the Court does not have jurisdiction to modify Petitioner's sentence (ECF No. 12 at 3–6); (2) Petitioner has failed to exhaust her administrative remedies with respect to her claim that she should be entitled to both earned and future unearned FSA time credits, and even so, the BOP is accurately calculating Petitioner's earned time credits (*Id*. at 6-12); and (3) the decision to prerelease Petitioner to community placement or home confinement under the Second Chance Act is solely a discretionary decision made by the BOP (*Id*. at 12–15).

## II.   LEGAL STANDARD

A federal prisoner may petition for habeas relief if he is "in custody in violation of the Constitution or laws or treaties of the United States[.]" 28 U.S.C. § 2241(c)(3). "A writ of habeas corpus under § 2241 is available to a federal prisoner who does not challenge the legality of his sentence, but challenges instead its execution subsequent to his conviction." *Carmona v. U.S. Bureau of Prisons*, 243 F.3d 629, 632 (2d Cir. 2001). Thus, habeas petitioners may seek relief under § 2241 "to challenge 'such matters as the administration of parole, computation of a prisoner's sentence by prison officials, prison disciplinary actions, prison transfers, [or] type of detention and prison conditions.'" *McPherson v. Lamont*, 457 F. Supp. 3d 67, 74 (D. Conn. 2020) (quoting *Jiminian v. Nash*, 245 F.3d 144, 146 (2d Cir. 2001))

---

[5] Petitioner filed a supplemental letter on November 12, 2024, arguing the same grounds for her release as set forth in her § 2241 Petition and Emergency Motion. *See* ECF No. 9. She claims that the BOP is not implementing her credits and once again, requests that her credits be applied "upfront." *Id*.

(collecting cases). The petitioner "bears the burden of proving that [she] is being held contrary to law; and because the habeas proceeding is civil in nature, the petitioner must satisfy [her] burden of proof by a preponderance of the evidence." *Skaftouros v. United States*, 667 F.3d 144, 158 (2d Cir. 2011).

### III.   DISCUSSION

#### A.   Request for a Sentence Modification or Reduction or Compassionate Release

At the outset, to the extent Petitioner is requesting a sentence reduction or compassionate release under 18 U.S.C. § 3582(c),[6] Petitioner must make these requests with the sentencing court that imposed her sentence. *See United States v. Avery*, 807 F. Appx 74, 77 (2d Cir. 2020); *see also United States v. De Jesus Sierra*, No. 3:10-CR-416, 2021 WL 354954, at *3 (S.D.N.Y. Feb. 2, 2021) ("Congress amended 18 U.S.C. § 3582(c)(1)(A)(i) to provide the sentencing judge jurisdiction to consider a defense motion for Reduction in Sentence (RIS or 'Compassionate Release')."). Petitioner was sentenced in the United States District Court for the Southern District of New York. *See* J. of Conviction, Ex. 2, ECF No. 12-2. Accordingly, to the extent that Petitioner requests this Court to afford her a sentence reduction or compassionate release, this Court lacks jurisdiction to consider her request.

#### B.   Petitioner's Challenge to Computation of Time Credits under the FSA and Failure to Exhaust

The Court agrees with Respondent that Petitioner has failed to exhaust her administrative remedies. *See* ECF No. 12 at 6–7. "The Second Circuit has made clear that a petitioner must exhaust her administrative remedies prior to filing an action under § 2241."

---

[6] *See* ECF Nos. 3; 12 at 3–6.

*Daraio v. Lappin*, No. 3:08-CV-1812(MRK), 2009 WL 303995, at *3 (D. Conn. Feb. 9, 2009). "Section 2241 does not by its own terms require the exhaustion of state remedies as a prerequisite to the grant of federal habeas relief, [but] decisional law has superimposed such a requirement in order to accommodate principles of federalism." *U.S. ex rel. Scranton v. State of N.Y.*, 532 F.2d 292, 294 (2d Cir. 1976). "[T]he burden of demonstrating exhaustion of administrative remedies is on the petitioner." *Paulino v. Flowers*, No. 3:24-CV-1569, 2025 WL 297388, at *1 (D. Conn. Jan. 24, 2025).

To exhaust administrative remedies, federal regulations require prisoners to complete a four-step administrative review process as follows: "(1) attempt an informal resolution using a BP-8 form; (2) submit a written remedy request to the warden on a BP-9 form; (3) appeal to the Bureau of Prisons (BOP) regional director on a BP-10 form; and (4) appeal to the BOP general counsel's office on a BP-11 form." *Donato v. Pullen*, No. 3:22-CV-640, 2023 WL 1967340, at *1 (D. Conn. Feb. 13, 2023). If a petitioner fails to exhaust administrative remedies a procedural default results, thus creating a bar to judicial review unless the petitioner can demonstrate cause and prejudice for the default. *Giamo v. Stover*, No. 3:24-CV-28, 2024 WL 4188498, at *4 (D. Conn. Sept. 13, 2024); *Carmona,* 243 F.3d at 634. A court has discretion to excuse compliance with the BOP administrative remedies where: "(1) available remedies provide no genuine opportunity for adequate relief; (2) irreparable injury may occur without immediate judicial relief; (3) administrative appeal would be futile; and (4) in certain instances a [petitioner] has raised a substantial constitutional question." *Emery v. Pullen*, No. 3:22-CV-1003, 2023 WL 348114, at *4 (D. Conn. 2023) (quoting *Beharry v. Ashcroft*, 329 F.3d 51, 62 (2d Cir. 2003)).

Here, the Court finds no evidence in the record that Petitioner has completed any steps of the administrative process. In fact, Petitioner has admitted that she has not filed a grievance nor sought an administrative remedy pertaining to the issues raised in her § 2241 Petition. (*See* ECF No. 1 at 2). Respondent has also provided evidence to substantiate that Petitioner has not filed any Requests for Administrative Remedy or Administrative Appeals during any point in her incarceration. Breece Decl. Ex. 3, at ¶ 22, ECF No. 12-3.

Petitioner has also failed to demonstrate that she meets any of the exceptions for the Court to excuse her compliance with BOP administrative remedies. She claims that "[n]ot adjusting [her] time credits violates the BOP policy [and] her constitutional rights and prejudices [her] extremely causing irreparable damage as [her] immediate family needs a caretaker and caregiver urgently." ECF No. 3 at 2. As an initial matter there is no irreparable injury here and Petitioner's rights are not being violated because she is not currently eligible to have her FSA credits applied.[7] *See* 18 U.S.C. § 3624(g)(1)(A) (defining an "eligible

---

[7] The First Step Act was enacted "to encourage federal prisoners to complete evidence-based recidivism reduction programs ("EBPRs") and other productive activities ("PAs") by providing time credits to an inmate who successfully completes such programs. *See* 18 U.S.C. § 3632(d)(4)(C); 28 C.F.R. § 523.40(b); *Dailey v. Pullen*, No. 3:22-CV-1121, 2023 WL 3456696, at *2 (D. Conn. May 15, 2023). An inmate classified as minimum or low risk of recidivism earns either ten or fifteen days of FSA time credits for every thirty days of successful participation in EBRRs or PAs. 18 U.S.C. § 3632(d)(4)(A). Application of these credits enables an inmate to transfer to prerelease custody (on home confinement or to a residential reentry center ("RRC")), or to discharge to her term of supervised release, prior to the completion date of her sentence. *See* 18 U.S.C. §§ 3624(g)(2) and (3); 18 U.S.C. § 3632(d)(4)(C); *see also Saleen v. Pullen*, 2023 WL 3603423, at *1 (D. Conn. Apr. 12, 2023). But if a defendant's sentence includes supervised release, as Petitioner's does (*see* ECF No. 12-2 at 3), the term of prerelease placement cannot exceed twelve months. See 18 U.S.C. § 3624(g)(3).

prisoner" as one who "has earned time credits under the risk and needs assessment system . . . in an amount that is equal to the remainder of the prisoner's imposed term of imprisonment").

The BOP can only apply an inmate's FSA credits to reduce her term of imprisonment when certain conditions are met—one requirement is that the number of the inmate's earned FSA time credits equate to, at the very least, "the remainder of the prisoner's imposed term of imprisonment." 18 U.S.C. § 3624(g)(1)(A); *see also Clark v. Jamison*, No. 3:23-CV-455 , WL 7300582, at *1 (D. Conn. Nov. 6, 2023). In other words, the inmate is not eligible for application of her FSA time credits until the number of credits equals the number of days remaining on her sentence. *See Dailey v. Pullen*, No. 3:22-CV-1121, 2023 WL 3456696, at *4 (D. Conn. May 15, 2023) ("As a result, although an individual may earn FSA time credits on an on-going basis, the individual is not eligible to have FSA credits applied until the time credits are equal to the individual's pending term of imprisonment."). Part of this rationale is that "Earned Time Credits" ("ETCs") under the FSA, "like good conduct credit, may be lost." *Gilmore v. Puzio*, No. 3:24CV1685 , 2025 WL 509344, at *4 (D. Conn. Feb. 14, 2025) (citing 28 C.F.R. § 523.43 &28 C.F.R. § 541.3).

Here, Petitioner is not currently eligible for the application of her FSA time credits. From January 16, 2024, the day Petitioner began serving her federal sentence, through November 2, 2024, Petitioner had earned 105 days[8] of FSA credits. (ECF No. 12-3 at ¶¶ 8-9.)

---

[8] In the Breece Declaration, there is a footnote stating that Petitioner currently has 135 FSA credits, (ECF No. 12-3 at ¶ 10 n.1), but the Court finds that this appears to be a scrivener's error as all other references to Petitioner's FSA credits from January 16, 2024, through November 2, 2024, state that Petitioner had 105 FSA credits, (ECF Nos. 12 at 2, 10,12; 12-3 at ¶ 9).

7

Her statutory projected release date, applying only good time credits, is September 24, 2027,[9] approximately 878 days from April 29, 2025, the date this order was entered. Because her FSA credits do not yet equal the number of days left on the remainder of her imposed term of imprisonment, she cannot apply her earned FSA credits to reduce her sentence at this time.[10] Moreover, only "[a] prisoner . . . who *successfully completes* evidence-based recidivism reduction programming or productive activities, shall earn time credits." 18 U.S.C. § 3632(d)(4)(A) (emphasis added). Thus, future or incomplete programming does not generate FSA credit and cannot reduce an imposed term of imprisonment. *See* 18 U.S.C. § 3624(g)(1)(A).

As for the other exceptions under which a court has discretion to excuse compliance with BOP administrative remedies, none are applicable here. The record provides no indication that prison officials are incapable of addressing Petitioner's concerns or that she will be subject to undue prejudice to justify the federal court's review prior to completion of her administrative remedies. There is also no suggestion that the futility exception applies in this case. *See Beharry*, 329 F.3d at 62. The exhaustion requirement is intended to "protect[] the authority of administrative agencies, limit[] interference in agency affairs, develop[] the factual record to make judicial review more efficient, and resolv[e] issues to render judicial review

---

[9] (ECF No. 12-3 at ¶ 7.)

[10] Assuming Petitioner continues to earn FSA credits at her current rate without interruption and does not lose credits: (a) she is expected to earn 365 FSA credits to be applied toward her early transfer to supervised release, resulting in an anticipated release date of September 24, 2026; (b) and expected to earn credits in an amount that is equal to her imposed term of imprisonment by an anticipated date of August 10, 2026, such that she will be eligible to apply credits toward prelease custody. (ECF No. 12-3 at ¶¶ 11-12.) This is an estimated calculation for planning purposes only. (ECF No. 12 at 10–11 n.4.)

unnecessary." *Id*. (citing *McCarthy v. Madigan*, 503 U.S. 140, 145 (1992)). it would be contrary to the purpose of exhaustion to involve the Court in the day-to-day operations of the facility without first affording prison officials the opportunity to address her concerns. In addition, Petitioner may achieve her desired result through the exhaustion process, and the exhaustion procedure will develop a factual record to facilitate judicial review. *See id.*.

1) Second Chance Act

Petitioner is also requesting immediate release to a halfway house, transfer to a community confinement center or residential reentry center, or home confinement under the Second Chance Act, 18 U.S.C. 3624(c).[11] This Court does not have the authority to grant this request. The SCA allows the BOP, in its discretion, to place inmates in prerelease custody in a residential reentry center or on home confinement during the final months of their term of imprisonment (not to exceed twelve months) to adjust to and prepare for reentry into the community. *See* 18 U.S.C. § 3624(c)(1).

The "BOP has the exclusive authority to determine the facility where an inmate will serve his sentence and to transfer the inmate from one facility to another." *Milchin v. Warden*, No. 3:22-CV-195, 2022 WL 1658836, *2 (D. Conn. May 25, 2022). Any decision of the BOP relating to the place of confinement "is not reviewable by any court." 18 U.S.C. § 3621(b); *see U.S. v. Kanagbou*, 726 F. App'x 21, 25 n.1 (2d Cir. 2018) (noting that the "district court does not control how the Executive Branch carries out a defendant's sentence"). "[C]ourts considering requests to be transferred to home confinement have consistently denied such requests, as they lack authority to order such transfers." *Id.* (citing *U.S. v. Woody*, 463 F. Supp.

---

[11] *See* ECF No. 3 at 3.

3d 406, 408–09 (S.D.N.Y. 2020)). As pre-release custody "placement under the SCA is within the sole discretion of BOP[,]" Petitioner has no right to relief for a court order requiring her release to community placement or home confinement under the SCA. *Fall v. Stover*, No. 3:24-CV-1176, 2024 WL 4564605, at *2 (D. Conn. Oct. 24, 2024); *Fournier v. Zickefoose*, 620 F. Supp. 2d 313, 318 (D. Conn. 2009).

## IV. CONCLUSION

For the foregoing reasons, the Petition for writ of habeas corpus [ECF No. 1] and the Emergency Motion [ECF No. 3] are: (a) **DISMISSED** for failure to exhaust administrative remedies before commencing this action and to the extent Petitioner seeks modification of her sentence or compassionate release; and (b) **DENIED** to the extent Petitioner seeks review of decisions committed to the discretion of the Bureau of Prisons, including placement or other relief under the Second Chance Act. The Clerk of the Court is respectfully requested to close this action.

**SO ORDERED.**

Hartford, Connecticut
April 29, 2025

/s/Vernon D. Oliver
VERNON D. OLIVER
United States District Judge